HARTLINE, DACUS, BARGER, DREYER &
KERN, L.L.P.
C. Vernon Hartline
Scott Edwards
Melissa Dorman
6688 North Central Expressway
Dallas, Texas 75206
Telephone: (214) 346-3700
Email: hartline@flash.net

FENNEMORE CRAIG
Graeme Hancock (No. 007190)
Lawrence E. Palles (No. 020263)
3003 North Central Avenue
Suite 2600
Phoenix, Arizona 85012-2913
Telephone: (602) 916-5000
Email: ghancock@fclaw.com
Email: lpalles@fclaw.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ALFRED GONZALEZ, as personal representative of the Estate of MARTIN E. GONZALEZ, Deceased, and ALFRED GONZALEZ, individually, and for the benefit of MARY L. GONZALEZ, as surviving parents of MARTIN E. GONZALEZ, Deceased,<br><br>          Plaintiff,<br><br>    v.<br><br>CONTINENTAL TIRE NORTH AMERICA INC., F/K/A CONTINENTAL GENERAL TIRE, INC., an Ohio corporation,<br><br>          Defendant. | No. CV00-611-TUC-RCC<br><br>**CONTINENTAL TIRE NORTH AMERICA, INC.'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' PROFFERED EXPERT, ALLAN J. KAM, ESQ.** |

For the reasons stated in the accompanying Memorandum of Law, Defendant Continental Tire North America, Inc., formerly known as Continental General Tire, Inc.

("CTNA"), respectfully moves *in limine* to exclude testimony of Plaintiffs' expert Allan J. Kam.

Respectfully submitted this _____ day of August, 2005.

| HARTLINE, DACUS, BARGER, DREYER & KERN, L.L.P. | FENNEMORE CRAIG |
|---|---|
| By /s/ Lawrence E. Palles for<br>   C. Vernon Hartline<br>   Scott Edwards<br>   Melissa Dorman<br>   Attorneys for Defendant | By /s/ Lawrence E. Palles<br>   Graeme Hancock<br>   Lawrence E. Palles<br>   Attorneys for Defendant |

**MEMORANDUM IN SUPPORT OF CTNA's MOTION *IN LIMINE*<br>TO EXCLUDE THE TESTIMONY OF ALLAN J. KAM, ESQ.**

The testimony of Plaintiffs' expert Allan J. Kam should be precluded on the grounds that: (i) his opinions are irrelevant; (ii) his opinions are speculative; (iii) his opinions are impermissible legal conclusions; (iv) he is not qualified to testify as an expert and his opinions are unsupported; (v) his opinions are unfairly insulated from scrutiny during cross-examination because of what he refuses to disclose; and (vi) his opinions are unfairly prejudicial.

**I.  BACKGROUND**

    **A.  The Subject Tire**

This product liability action arises from a motor vehicle accident occurring on October 8, 1998. Martin E. Gonzalez was driving a 1994 Chevrolet Cavalier ("the subject vehicle") when the right rear tire allegedly sustained a tread/belt separation, and Mr. Gonzalez lost control of the vehicle. The tire on the right rear on the subject vehicle was a P185/75R14 Ameri*Tech ST steel belted radial passenger tire, bearing Department of Transportation serial number ACJ7AC2463 ("the subject tire"). According to its serial

1  number, the subject tire was manufactured at CTNA's plant in Charlotte, North Carolina
2  during the 46th week of 1993. This is the tire Plaintiffs claim was defective in design and
3  manufacture.
4  The P185/75R14 Ameri*Tech ST tire was designed for use by General Motors
5  ("GM") on its J, L, N and A type vehicles (which includes the Chevrolet Cavalier). The
6  P185/75R14 Ameri*Tech ST tire line was first released for production as original
7  equipment for GM in May 1992. The subject tire line was produced in Charlotte for the
8  original equipment market until July 1994. During that period, CTNA produced
9  approximately 2.5 million of these tires.

**B. Allan J. Kam**

Plaintiffs have disclosed Allan J. Kam ("KAM"), a former lawyer with the National Highway Traffic Safety Administration ("NHTSA"), as an expert witness. Kam intends to do three things at the trial of this matter. First, he proposes to provide the jury a background of NHTSA and NHTSA's regulation of tires in the 1990s, the Office of Defects Investigation ("ODI"), and the defect investigation process – all factual information contained in publicly available documents – together with a legal analysis of the governing statutes and regulations. *See* Kam's Direct Testimony Report ("Direct Report"), attached as Exhibit A.

Second, Kam plans to identify for the jury certain documents that he contends CTNA should have produced in response to NHTSA's information request in connection with its Preliminary Evaluation, PE93-012, despite the fact that the investigation did not include the subject tire. In fact, the subject tire was expressly excluded from the investigation.[1] Even worse, none of the allegedly "withheld" documents that Kam identifies relate to the subject tire or tires that are substantially similar to the subject tire.

---

[1] CTNA has separately filed a motion in *limine* to exclude any reference to NHTSA and its preliminary evaluation of certain tires, which did not include the subject tire.

Finally, Kam seeks to apply his interpretation of the governing law to the facts he deems important to draw legal conclusions disguised as expert opinion about whether CTNA withheld relevant documents from NHTSA, whether the alleged withholding of information was intended to mislead the agency, whether the alleged withholding violated federal law, and whether the disclosure of certain documents would have led the agency to expand its investigation to include the subject tire – this despite the fact that NHTSA never investigated the subject tire and no evidence suggests that it would have expanded the investigation. *See* ODI Closing Resume, attached as Exhibit B. Specifically, Kam opines in his Rebuttal Testimony Report in this matter ("Rebuttal Report"), attached as Exhibit C, that:

- CTNA "withheld" numerous documents identifying significantly higher rates of warranty claims, or adjustments, and other critical data. Moreover, such "withholding" constituted a violation of the former section 112 of the Safety Act, *id.* at 15, *even though such documents do not regard the performance of the subject tire and, therefore, would be irrelevant to this case*;[2]

- Had CTNA provided the "withheld" documents to NHTSA, "it is likely that the agency would not have closed PE 93-02 [sic]," *id.*, *even though Kam provided no explanation or basis for this purely speculative opinion;* and

- Had CTNA provided certain documents, "it is more likely tha[n] not that ODI would have upgraded the investigation to a full investigation, known as an Engineering Analysis, and would have expanded it to include all sizes, which would include the tire at issue" *id.*, *even though NHTSA was satisfied with CTNA's document production and never indicated that an engineering analysis, if necessary, would have included the subject tire*.

This Court should exclude Kam's testimony for the following reasons:

1. <u>Kam's opinions are irrelevant to any matter at issue.</u>

The issue in this case is why the tire at issue failed and whether Plaintiffs' injuries are CTNA's responsibility. Given these issues, Kam's opinions that CTNA had a legal

---

[2] Moreover, after PE93-012 was closed, and on its own initiative, CTNA produced the referenced documents to NTHSA. NHTSA took no further action even after having received the documents.

duty to produce certain documents and that NHTSA could have expanded its investigation are simply irrelevant. Furthermore, the law that Kam claims CTNA violated does not create a private cause of action. As a result, Kam's testimony should be excluded pursuant to Fed. R. Evid. 401, 402.

### 2. His testimony is based on mere speculation.

Kam also speculates as to how he believes NHTSA would have acted if certain documents, which are unrelated to the subject tire, were produced. Such speculation is not only unfounded, but also directly contradicted by what NHTSA actually did. Again, purely speculative testimony, even by an expert, is inadmissible. Fed. R. Evid. 402, 702.

### 3. Kam's testimony constitutes inadmissible legal opinion.

Kam frankly admits that he was asked to address, *inter alia*, "whether Ameri Tech tires were a subject of a federal government safety defect investigation, whether General Tire improperly withheld information from the government during that investigation, and if so, whether the improper withholding influenced the government to close the investigation." Rebuttal Report at 1. True to this mandate, Kam's report is a legal brief, complete with extended discussions of Kam's subjective interpretation of federal statutes, regulations, and case law. Kam's legal arguments are crafted to support purely legal "conclusions." As shown below, Plaintiffs cannot offer expert testimony that consists of nothing but legal conclusions. Such testimony would create an extreme danger of prejudice to CTNA because the jury might be accord undue weight to the conclusions of a former NHTSA attorney. Further, as the Court should be the sole source of instructions on the law, Kam's testimony will likely confuse and mislead the jury. Fed. R. Evid. 403.

. . .

. . .

. . .

. . .

   4. <u>Kam is not qualified as a matter of law and his opinions are unsupported and unreliable</u>.

Kam is not an engineer, has no scientific degree or expertise of any sort, and in fact, is a retired lawyer who is not even licensed to practice in Arizona. Furthermore, Kam's opinions are not based on his examination of the tire at issue or any other CTNA tire. Rather, according to his testimony, Kam's opinions and conclusions are based merely on his "very large experience base over 25 years in the agency dealing with hundreds of investigations." Kam Deposition, dated November 1, 2002 ("Kam Dep."), page 78, attached as Exhibit D. Unfortunately, Kam is unable to identify one concrete example to demonstrate his "very large" experience. Thus, Plaintiffs failed to establish that Kam is qualified to offer an opinion about what NHTSA would do under a particular set of circumstances.

Moreover, Kam's "methodology" is based primarily on his examination of selected documents, which are unrelated to the subject tire, and then purporting to predict what NHTSA would have done in light of those documents. Kam, however, offers no scientific analysis for his prediction, and refuses to disclose the basis of his knowledge and "expertise" that lead to the conclusions he draws. For this reason, and those stated below, Kam's principles and methodology cannot meet the scientific reliability standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

   5. <u>Federal regulations unfairly insulate his testimony from cross-examination</u>.

Kam readily admits that his purported "expertise" is based almost exclusively on his personal experience as a NHTSA employee. Yet, while he confidently predicts how NHTSA would have reacted if faced with a hypothetical set of assumed facts, Kam is precluded from answering any questions regarding NHTSA's deliberative process or investigations he personally worked on – the very experiences that serve as the basis for

his "expertise." Kam Dep. at 49-50. Thus, Plaintiffs seek to use Kam as a sword to offer the speculative decisions he claims NHTSA would have made, while shielding him from any cross-examination on his methodology or basis of knowledge. Fed. R. Evid. 611, 705.

      6.    <u>Admission of Kam's testimony would be unfairly prejudicial</u>.

Even though Kam's opinions are clearly baseless and contrary to what NHTSA actually did, references to terms such as "withholding documents" and "misleading the agency," if shrouded in the apparent imprimatur of a former United States Government employee, would jeopardize CTNA's right to a fair trial in this matter. Consequently, Kam's opinions are highly inflammatory and unfairly prejudicial to CTNA and should be excluded. Fed. R. Evid. 403.

**II.    ARGUMENT**

    A.    <u>Kam's Opinions Are Irrelevant Because They Are Unrelated to the Subject Tire and There Is No Private Cause of Action for Withholding Documents Under the Safety Act.</u>

Kam concedes that NHTSA's information request to CTNA was limited to sizes P195/75R15 through P235/75R15, and that the tire at issue, a "P185/75R14, is a smaller size than those *within the scope* of PE93-012." Rebuttal Report at 14 (emphasis added). Indeed, during his deposition, Kam agreed that "the size designation for the tire at issue in this case was *not* a subject of the NHTSA investigation PE93-12." Kam Dep. at 41 (emphasis added). In other words, even Kam recognizes the obvious fact that the subject tire is outside the scope of NHTSA's preliminary evaluation, which is the sole subject of Kam's expert reports and testimony. Put simply, Kam's reports and testimony pertain to an investigation of tires that are unrelated to the subject litigation.

Moreover, Kam's opinion that CTNA withheld certain documents from NHTSA, and that, had those documents been produced, NHTSA would have upgraded the investigation to a full Engineering Analysis and "expanded it to include all sizes," is

speculative and therefore equally irrelevant. Rebuttal Report at 15. Moreover, the Safety Act does not create a private cause of action for either failure to produce documents or failure to recall. *See Ayres v. General Motors Corp.*, 234 F.3d 514, 524 (11th Cir. 2000) (holding that comprehensive regulatory scheme created by the Safety Act precludes private cause of action to enforce notification or recall requirements); *Handy v. General Motors Corp.*, 518 F.2d 786, 788 (9th Cir. 1975). Indeed, a state common law tort action is not the appropriate forum in which to attempt to police federal regulatory activity administered by a federal regulatory agency. *See, e.g.*, *Buckman Co. v. Plaint Comm.*, 531 U.S. 341, 348 (2001); Order, *Kobar v. Novartis Corp., et al.*, No. CIV 01-0156-PHX-SRB (D. Ariz. 2005), attached as Exhibit E.

In *Kobar*, the court, relying heavily on *Buckman*, found unconstitutional a section of an Arizona statute that permits personal injury plaintiffs to receive punitive damages in a product liability suit against a drug company if they can prove that the company defrauded the regulatory agency. *Id.* The court so held on the grounds that the state statute conflicted with federal law, which empowered the regulatory agency to investigate submissions by drug companies. *Id.* Further, the court held that the statute "places the courts, as fact finders, in the uncomfortable and difficult position of having to answer the question of what role, the allegedly withheld information would have placed in the [agency's] complicated [investigation] process." *Id.*

Similarly, Kam seeks to usurp NHTSA's role as the regulatory agency empowered to investigate submissions by tire companies. Further, through Kam's testimony, Plaintiffs intend to place this Court and the jurors in the same "uncomfortable and difficult position" of having to answer the question of what role the allegedly withheld information would have played in PE93-012.

The key question in this case is whether the tire at issue was defective. Kam's speculations as to whether CTNA withheld certain documents and whether NHTSA

would, could, or should have expanded its investigation to include the tire at issue are simply irrelevant, and will serve only to confuse the issues, mislead the jury, and unfairly prejudice CTNA.

### B. Kam's Opinions Regarding How NHTSA Would Have Reacted in a Hypothetical Situation Are Purely Speculative.

Expert testimony is admissible only if "the testimony is based on sufficient facts or data." Fed. R. Evid. 702. Rampant speculation "could be very misleading to the average juror." *Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd,* 416 F.2d 71, 87-88 (9th Cir. 1969).

Here, Mr. Kam suggests that, "[h]ad General Tire provided [certain] documents to NHTSA . . . it is likely that the agency would not have closed PE 93-02 [sic]. . . . [I]t is more likely tha[n] not that the agency would have upgraded the investigation to a full investigation, known as an Engineering Analysis, and would have expanded it to include all sizes, which would include the tire at issue." Rebuttal Report at 15. Interestingly, Kam never suggests that, had those documents been produced, the subject tire would have been recalled. Rather, Kam merely states that the agency would have asked more questions and devoted more resources to the investigation. Plainly, Kam's opinion is nothing more than baseless speculation and is clearly inadmissible. Indeed, as Kam himself admits, he does not and cannot speak for NHTSA. Direct Report at 2-3. Thus, his speculations should not be admitted into evidence.

### C. Kam's Testimony Is Inadmissible Legal Opinion.

It is well settled under Arizona law that legal opinions are inadmissible as expert testimony. *See Hafner v. Beck*, 185 Ariz. 389, 393, 916 P.2d 1105, 1109 (Ct. App. 1995) ("Although standards for experts' qualifications and admissibility of their opinions have been stretched considerably, we have not yet reached the point when experts can dictate the law"). *See also* Note, Expert Legal Testimony, 97 Harv. L. Rev. 797 (1984) ("it

1 remains black-letter law that expert legal testimony is not permissible") (footnote
2 omitted).  Although expert testimony is admissible when it will assist the trier of fact in
3 understanding the evidence or determining a disputed issue of fact, *United States v.*
4 *Brodie*, 858 F.2d 494, 496 (9th Cir. 1988), "resolving doubtful questions of law is the
5 distinct and exclusive province of the trial judge." *Id.* at 497. "Accordingly, federal
6 courts typically prohibit lawyers, professors, and other experts from interpreting the law
7 for the court or from advising the court about how the law should apply the facts of a
8 particular case." *The Pinal Creek Group, et al, v. Newmount Mining Corp., et al.*, 352 F.
9 Supp. 2d 1037, 1042 (D. Ariz. 2005). "Testimony 'which articulates and applies the
10 relevant law . . . circumvents the [fact finder's] decision-making function by telling it how
11 to decide the case.'" *Id.* (quoting *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988)).

12       The principle that legal opinion evidence concerning the law is inadmissible is so
13 well-established that it is often deemed a basis premise or assumption of evidence law.
14 *See id.* "Courts have held that expert testimony by lawyers, law professors, and others
15 concerning legal issues is improper." *Id.* at 1043. *See also United States v. Zipkin*, 729
16 F.2d 384, 387 (6th Cir. 1984) (reversing trial court's decision to allow bankruptcy judge to
17 testify regarding his interpretation of the Bankruptcy Act, stating that "[i]t is the function
18 of the trial judge to determine the law of the case").

19       In addition to prohibiting legal expert testimony that defines the governing law,
20 courts have also prohibited legal expert opinion that applies the law to the facts. Many
21 courts have held that the judge is the sole arbiter of the law and its application to the facts.
22 *The Pinal Creek Group*, 352 F. Supp. 2d at 1043. *See also Marx & Co. v. Diners' Club,*
23 *Inc.*, 550 F.2d 505, 508-11 (2nd Cir. 1977) (holding that the trial court erred in permitting a
24 lawyer to offer his opinions concerning securities law and the application of that law to
25 the contract in dispute); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995)
26 (finding that the trial court erred in allowing testimony that police officers' conduct

satisfied Fourth Amendment requirements stating that "[the expert's] testimony was not a fact-based opinion, but a statement of legal conclusion. These legal conclusions were for the court to make. It was an abuse of discretion to allow the testimony"); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (finding that court abused its discretion by allowing witness to testify that defendant had a duty to hire tax counsel, stating "[a] witness also may not testify to the legal implications of conduct"); *Specht,* at 809 (stating that "testimony on ultimate issues of law by the legal expert is inadmissible because it is detrimental to the trial process").

The Ninth Circuit has also excluded legal expert testimony concerning both what the law is and how it should be applied to the facts of a case. *See Aguilar v. International Longshoremen's Union Local # 10*, 966 F.2d 443, 447 (9th Cir. 1992) ("[R]easonableness and foreseeability . . . were matters of law for the court's determination"). Fed. R. Evid. 702 does not permit expert opinion concerning legal matters. Accordingly, in *Aguilar*, because the reasonableness and the foreseeability of the worker's reliance were matters of law for the court's determination, the court found that those issues were outside the parameters of Fed. R. Evid. 702 and "were inappropriate subjects for expert testimony." *Id*. *See also United States v. Wietzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993) (expert testimony explaining the legal effect of an environmental permit was improper because the judge consigned the interpretation of the law to the jury that was "an impermissible delegation of the district judge's duties").

Finally, courts routinely exclude improper expert legal testimony regarding whether a manufacturer's alleged conduct does or does not violate a legal duty. *See*, *e.g.*, *Rodriguez v. Clark Equip. Co.*, 147 F. Supp. 2d 81, 85 (D.P.R. 2001) (excluding expert testimony that crane manufacturer was negligent in failing to perform a "proper safety analysis" and for "failing to recall the crane"); *Coyne v. Anderson & Assoc., Inc.*, 574 N.E.2d 863, 868 (Ill. Ct. App. 1991) (reversing trial court's failure to exclude expert

testimony regarding party's "legal duties" under statute because testimony was inadmissible legal conclusion).

Kam, a self-described "tire lawyer," makes little effort to disguise the purely legal nature of his opinions. Indeed, his "expert reports" read more like legal briefs. In describing his role as an expert in this matter, Kam affirmatively states that he was "asked to explain . . . how the National Highway Traffic Safety Administration regulated tires in the 1990's." Direct Report at 1. His Direct Report details the provisions of the Safety Act as it applies to tires, and describes the investigative process conducted by the Office of Defect Investigation. As the headings of his report reveal, Kam simply provides a basic analysis of the governing law:

- "Background on NHTSA and the Safety Act." Direct Report at 3.
- "What are Federal Motor Vehicle Safety Standards." *Id.* at 4.
- "NHTSA's Basic Tire Standards." *Id.* at 5.
- "A FMVSS is Only a Minimum Standards." *Id.* at 6.
- "Obligation to Recall Defective Tires Under the Safety Act." *Id.* at 8.

Notably absent from this "expert report" are any opinions that apply to the subject tire; rather, the report is a mere explanation of the relevant law.

Additionally, Kam "was asked to address, whether Ameri Tech tires were a subject of a federal government safety defect investigation, whether General Tire improperly withheld information from the government during that investigation, and if so, whether the improper withholding influenced the government to close the investigation." Rebuttal Report at 1. Not surprisingly, Kam then provides purely legal responses to these purely legal questions. Kam first provides a factual background of PE-012 and sets forth the scope of NHTSA's Information Request to CTNA, none of which requires any "expert" opinion. He then goes on to describe certain documents that clearly have no connection to

the subject tire, and offers his own legal conclusions about whether CTNA was legally required to produce such documents in response to NHTSA's investigation, and whether, in light of the "withheld" documents, NHTSA would have broadened its investigation to include the subject tire.

Kam's testimony regarding the reasonableness of NHTSA's decision to end its investigation and that CTNA violated federal law is no more admissible than testimony by a law professor that a party was negligent or testimony by a prosecutor that a criminal suspect has committed a crime. In all three instances, the proffered testimony is inadmissible legal opinion.

### D. Kam Is Unqualified as a Matter of Law and his Opinions Are Unsupported and Unreliable.

Expert testimony is permitted where a witness is "qualified as an expert by knowledge, skill, experience, training, or education" to testify as to "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. The word "knowledge," of course, "connotes more than subjective belief or unsupported speculation." *Cloud v. Pfizer, Inc.,* 198 F. Supp. 2d 1118, 1129 (D. Ariz. 2001). Accordingly, testimony that is based on unsupported speculation, as is Kam's testimony, is not reliable and not admissible as expert testimony since it will only lead to confusion and prejudice. Fed. R. Evid. 402, 403, 702.

Factors determining the admissibility of expert testimony include the following: (1) whether the reasoning or methodology underlying the expert's opinion has been or could be tested; (2) whether the reasoning or methodology has been subject to peer review and publication; (3) the known or potential rate of error; and (4) the level of acceptance of the reasoning or methodology by the relevant professional community. *See id.* at 149-52; *Daubert,* 509 U.S. at 592-95. Thus, although Rule 702 was intended to liberalize the introduction of relevant expert evidence, such testimony is subject to being tested by

1  "vigorous cross-examination, presentation of contrary evidence, and careful instruction on
2  the burden of proof." *Daubert,* at 595-96. Indeed, courts must recognize that expert
3  witnesses have the potential to "be both powerful and quite misleading." *Id*. Where the
4  expert's testimony is based on mere speculation, however, the potential for misleading the
5  jury becomes so great as to demand its exclusion under Rule 403.

6  Here, Kam is unqualified to render opinions as to whether NHTSA would have
7  expanded a particular investigation. There is no question that Kam is very knowledgeable
8  about the statutes, regulations, and case law governing defect investigations by NHTSA.
9  His reports are mini-treatises on the subject. His legal expertise, however, does not
10 qualify him to offer an opinion about what the agency would have done in the context of a
11 specific defect investigation. The mere fact that he worked for NHTSA as a lawyer and
12 has some understanding of the statutes does not mean he is qualified to second-guess
13 NHTSA's decision to end its investigation. A blanket qualification for all former NHTSA
14 employees to testify as to anything related to safety defect investigations would
15 contravene the Court's gate-keeping responsibilities to admit only relevant and reliable
16 testimony.

17 Kam is also unqualified because he did not personally participate in PE93-012 and
18 is unable to identify one specific basis for his opinions. For his opinions to be admissible,
19 Plaintiffs must show that Kam's method is scientifically sound and his opinion is based on
20 sufficiently reliable facts. *See Cloud,* 198 F. Supp. 2d at 1129. At a minimum, Kam
21 should describe the methods he used in reaching, and the data supporting, his
22 determination. Indeed, courts do not focus primarily on an expert's conclusions, but
23 rather on whether the principles and methodology applied are sound. *See Daubert* at 595.
24 Thus, if any step renders Kam's opinion unreliable – either in the choice of methodology
25 or its application – his opinions are inadmissible.

26 Kam states that his opinion depends solely on his "very large experience base over

1  25 years in the agency dealing with hundreds of investigations." Kam Dep. at 78.
2  Unfortunately, other than his self-professed "very large" experience, Kam could not
3  identify one instance in which NHTSA expanded an investigation in a manner he is
4  suggesting now. He has no personal knowledge about the investigation at issue, or the
5  manner in which NHTSA arrived at its decision. Therefore, Kam's opinion is not based
6  on any personal knowledge, involvement, or activity. For example, when asked to
7  identify the basis of his conclusion that NHTSA would have expanded the investigation to
8  tires of all sizes, Kam replied, "I can't discus in any detail specific investigations that I
9  worked on, but it certainly is a matter of public record that there was a Ford recall of, I
10 think it was around 5 million vehicles." Kam Dep. at 46-47. In short, Kam's opinion is
11 based on nothing more than his general awareness of certain investigations that he neither
12 participated in, nor are related to the product of tires. Such testimony is not only
13 unreliable, it is not even relevant, and should be excluded. Fed. R. Evid. 402.

14     Kam may well be qualified to offer opinions about legal conclusions (which, as
15 noted above, are inadmissible here), but he has no training or experience in engineering or
16 tire defect evaluation that would enable him to testify about what a NHTSA engineer
17 would do in the context of a hypothetical investigation. In other words, he lacks any
18 qualifications in the discipline most important to the "multi-disciplinary" task of
19 identifying a safety-related defect.

20     This is not an issue of first impression. The Court of Appeals of Tennessee, in a
21 case involving integrated child seats, held that, because Kam "had no involvement with
22 the NHTSA investigation of the integrated child seat . . . [he] was not qualified to render
23 an opinion as to whether Chrysler violated any NHTSA regulation. That decision was
24 within the purview of NHTSA. NHTSA's decision not to pursue sanctions against
25 Chrysler following its recall indicates that the agency was satisfied that the regulations
26 were not violated." *Gibson ex rel. Gibson v. Chrysler Corp.*, 2004 WL 1918725, at *18

(Tenn. Ct. App. 2004), attached as Exhibit F. Just as in that case, where NHTSA's investigation did not result in a finding of a safety-related defect, Kam's testimony in this case "would only have usurped NHTSA's decision that [CTNA] had not violated the regulations." *Id.* *See also* Order Granting Defendant's Motion to Exclude NHTSA Experts, *Barbara Riley et al. v. Continental General Tire, Inc.,* Case No. 1:00-CV-369(TH), attached as Exhibit G, (holding that Kam's testimony regarding defendant's duty to provide NHTSA certain documents is inadmissible); Order, *The Northern Trust Company et al. v. Ford Motor Company, et al.*, Case No. 98L 4154, attached as Exhibit H (ruling that "Kam is banned from testifying concerning his opinions concerning negligent recall or that said tire were defective within the meaning of the Safety Act").

Thus, while Kam may argue that his opinion stems from his experience at NHTSA, he failed to establish that he is qualified as matter of law or that his opinion is supported by reliable foundation. Without the requisite qualifications and foundation, the purported "expert" testimony of a former government employee will result in unfair prejudice to CTNA and cause undue delay and confusion. Therefore, his testimony should be excluded.

### E. CTNA Is Unfairly Deprived of Its Right to Cross-Examine Kam on His Qualifications and Experience.

The right to an effective cross-examination is an integral part of the rights of confrontation guaranteed under the Sixth Amendment. *See, e.g.*, *Smith v. State of Illinois*, 390 U.S. 129 (1968), *Douglas v. Alabama*, 380 U.S. 415 (1965). Moreover, courts have granted the right a measure of constitutional protection in civil cases. McCormick On Evid., § 19 (5th ed.) (citing Tribe, American Constitutional Law § 10-15 (2nd ed. 1988)). The right to effective cross-examination is particularly important when dealing with experts. In fact, legal scholars have suggested that if "such cross-examination is precluded, as by invocation of a privilege, *it is proper to exclude the opinion*." 1 Joseph

1  Livermore, et al., Arizona Practice: Law of Evidence § 705, at 298 n.6 (4th ed. 2000)
2  (emphasis added).

3      Kam admits that the sole basis for his opinion is his "very large experience base
4  over 25 years in the agency dealing with hundreds of investigations." Kam Dep. at 78.
5  Despite this recognition, Kam refused to answer questions regarding his knowledge of
6  NHTSA's deliberative processes during investigations. Kam refused to answer CTNA's
7  question by citing Part 9 of 49 C.F.R. ("Part 9"), which includes 49 C.F.R. §§ 9.5 and
8  9.9(c), attached as Exhibit I.

9      Part 9 provides that: "No employee of the Department may . . . disclose any
10 information or produce any material acquired as part of the performance of that
11 employee's official duties." 49 C.F.R. § 9.5. Furthermore, "[a]n employee shall not
12 testify as an expert or opinion witness with regard to any matter arising out of the
13 employee's official duties or the functions of the Department." 49 C.F.R. § 9.9(c). The
14 combination of these two sections effectively shielded Kam and the basis of his testimony
15 from rigid cross-examination.

16     Kam's invocation of Part 9 severely restricts CTNA's ability to verify the
17 reliability of his testimony. For example, Kam refused to talk about any investigation
18 with which he was personally involved and which he admits is the sole basis of his
19 opinion. When asked:

20     Q.  Ford Escort or the Ford recall that you referred to. I believe
21            you indicated . . . that the expansion would be after NHTSA
              concluded that the same product was found on other vehicles?
22     A.  Well, I said, as a matter of public record, that that started out
23            as a preliminary evaluation just on Escorts and, ultimately,
              led to a recall of several million vehicles. Because I worked
24            on that investigation, I really am not permitted by the agency
              regulation to go into discuss the details of it.

25 Kam Dep. at 49-50. Thus, it would be patently unfair for Plaintiffs to offer Kam's
26 opinion, which speculates that CTNA violated a legal duty because it did not produce

FENNEMORE CRAIG
PROFESSIONAL CORPORATION
PHOENIX

1699453.1/21624.006

- 17 -

1   certain documents, then to shield the so-called expert from vigorous cross-examination.

2         Allowing Kam to offer testimony in this matter would be blatantly unfair to CTNA
3   since CTNA cannot inquire into his experiences and foundation, or test his opinions based
4   on what Kam did at NHTSA.  Perhaps the most crucial piece of evidence concerning his
5   qualification to testify in this matter would be his background and experience in tire
6   investigations that were subsequently expanded to include an entire line of tires,
7   regardless of size.  Kam, however, refuses to give that information.  How can CTNA be
8   expected to defend against this type of expert opinion?

9         Kam's repeated invocation of Part 9, which effectively stripped CTNA's right to
10   cross-examine the basis of his methodology, violates due process.  Therefore, his opinions
11   should be precluded.

12       F.    <u>Kam's Testimony Is Unfairly Prejudicial</u>.

13         While inadmissible for all of the reasons described above, it is worth emphasizing
14   just how unfairly prejudicial Kam's testimony would be to CTNA if admitted at trial.  In a
15   nutshell, Kam proposes to imply that the government could have recalled the tire at issue
16   had CTNA not engaged in some grand conspiracy to cover up information, and that, but
17   for CTNA's actions, Plaintiffs would not have been injured.  As discussed above, Kam
18   has no basis for his opinion.  To the contrary, his allegations are belied by CTNA's
19   cooperation with NHTSA's inquiry, and NHTSA's closing of its inquiry without any
20   suggestion that CTNA had withheld any information.  But the very mention of
21   inflammatory terms like "withholding documents" and "misleading the agency" in a
22   product liability case – especially from the mouth of a witness desperately trying to wear
23   the "badge" of the United States Government – inevitably would create juror confusion
24   and unfair prejudice to CTNA that even evidence of NHTSA's ultimate determination
25   could not repair.  Kam's opinions are demagoguery fueled by speculation, and should be
26   excluded pursuant to Fed. R. Evid. 403.

## III.  CONCLUSION

Kam brings nothing to this case but his own subjective interpretation of the federal laws (which he has rendered for a fee and which are irrelevant to the issues in this case), speculation as to how NHTSA might have acted under hypothetical circumstances (contradicted by NHTSA's actions and unfairly insulated from scrutiny by effective cross-examination), and combustive, prejudicial opinions that will not assist the fact finder and that he seeks to shroud in the imprimatur of the United States Government.  His testimony should be excluded.

DATED this 12th day of August, 2005.

| HARTLINE, DACUS, BARGER, DREYER & KERN, L.L.P. | FENNEMORE CRAIG |
|---|---|
| By /s/ Lawrence E. Palles for<br>C. Vernon Hartline<br>Scott Edwards<br>Melissa Dorman<br>Attorneys for Defendant | By /s/ Lawrence E. Palles<br>Graeme Hancock<br>Lawrence E. Palles<br>Attorneys for Defendant |

FENNEMORE CRAIG
PROFESSIONAL CORPORATION
PHOENIX

1699453.1/21624.006

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2005, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

William S. Frates
Frates & Smith, P.L.C.
830 Azalea Lane
Vero Beach, Florida 32963-4917
Attorneys for Plaintiff
sb@frates.com
sm@frates.com

Thomas F. Dasse
Law Office of Thomas F. Dasse, P.C.
14646 North Kierland Blvd., Suite 235
Scottsdale, Arizona 85254
Attorney for Plaintiff
tdasse@dasselaw.com
jtomlinson@dasselaw.com

/s/ Lawrence E. Palles

FENNEMORE CRAIG
PROFESSIONAL CORPORATION
PHOENIX

1699453.1/21624.006