1  HARTLINE, DACUS, BARGER, DREYER &
   KERN, L.L.P.
2  C. Vernon Hartline
   Scott Edwards
3  Melissa Dorman
   6688 North Central Expressway
4  Dallas, Texas 75206
   Telephone: (214) 346-3700
5  Email:  hartline@flash.net

6  FENNEMORE CRAIG
   Graeme Hancock (No. 007190)
7  Lawrence E. Palles (No. 020263)
   3003 North Central Avenue
8  Suite 2600
   Phoenix, Arizona  85012-2913
9  Telephone:  (602) 916-5000
   Email:  ghancock@fclaw.com
10 Email:  lpalles@fclaw.com

11 Attorneys for Defendant

12

13               IN THE UNITED STATES DISTRICT COURT

14               FOR THE DISTRICT OF ARIZONA

15 ALFRED GONZALEZ, as personal       No. CV00-611-TUC-RCC
   representative of the Estate of
16 MARTIN E. GONZALEZ, Deceased,
   and ALFRED GONZALEZ,
17 individually, and for the benefit of   **MOTION TO CLARIFY AND**
   MARY L. GONZALEZ, as surviving   **RECONSIDER A PORTION OF THE**
18 parents of MARTIN E. GONZALEZ,   **COURT'S RULING ON ALL MOTIONS**
   Deceased,                         **IN LIMINE**

19                 Plaintiff,

20        v.

21 CONTINENTAL TIRE NORTH
   AMERICA INC., F/K/A
22 CONTINENTAL GENERAL TIRE,
   INC., an Ohio corporation,
23
                   Defendant.
24

25

26        Defendant CTNA respectively requests the Court both clarify and reconsider the

FENNEMORE CRAIG       1712450.1/21624.006
PROFESSIONAL CORPORATION
PHOENIX

1    portion of its ruling on the Motions in Limine, set forth on pages 4-6 of the Court's Order
2    dated August 24, 2005 (Docket #461).

3    ### MEMORANDUM OF POINTS AND AUTHORITIES

4    The product in this case is a General Amer*Tech ST tire, size P185/75 R14,
5    manufactured in November of 1993 and sold as original equipment on the Chevrolet
6    1994 Cavalier involved in the accident.  The evidence confirms that Defendant CTNA
7    made more than 5,000,000 of these tires, with only 5 claims or lawsuits related to a tire
8    failure, a "one in a million" litigation history utterly inconsistent with plaintiffs' claim of
9    a generalized "design defect."  Similarly, the warranty records or "adjustments" for the
10   product in question confirm that there is nothing in the "adjustment rate" for this tire that
11   would put a reasonable manufacturer on notice of a repetitive problem involving tread
12   separations due to design or manufacturing errors.

13   Nevertheless, plaintiffs have put defendant on notice that they wish to introduce a
14   variety of information regarding other CTNA products, including other tread belt
15   separation accidents.  The variety of plaintiffs' exhibits and accusations lead CTNA to
16   file several distinct and specific Motions in Limine relating to plaintiffs' attempts to
17   introduce evidence of "similar accidents" or problems with "similar tires" under a variety
18   of theories of guises.  See Dockets 413, 414, 415, 418, 419, 420, 429, 436,  and 447.

19   The Court's omnibus Order acknowledges the variety of motions, without
20   differentiating among them.  See Order at 4.  It is clear that the Court excludes evidence
21   of other tire products or accidents involving *other* tire companies, and elsewhere makes it
22   clear that the Court denies admission of evidence relevant to claims of post sale duties,
23   duties to warn, or post sale duties to recall or breach of warranty claims, which are all not
24   at issue in this case.  The Court also denies plaintiffs' attempt to introduce evidence of
25   NHTSA investigations or recalls of any other products (whether by CTNA or any other
26   tire company).

FENNEMORE CRAIG
PROFESSIONAL CORPORATION
PHOENIX

1712450.1/21624.006

1   However, the Court does not specify the circumstances in which its motion

2   concerning dissimilar tires and accidents is otherwise denied.   Accordingly, CTNA

3   requests the Court clarify for the parties its understanding of the circumstances in which

4   the Court would determine an otherwise different product to be sufficiently "similar" to

5   be useful or relevant to the particular issue in this case, and what constitutes a sufficiently

6   "similar" accident to justify introduction or to permit them to be introduced at trial for the

7   purposes at issue.

8   Defendant also specifically requests that Court <u>reconsider</u> the portion of its Order

9   which appears to state that all accidents or evidence of tire products "involving the same

10   defect" would be admissible, defining the same "defect" as a "tread separation."   <u>See</u>

11   Court Order at 5 ("the basic defect in this case is tread separation").   Although the Court

12   may not be going so far as to state that all tread separations of all CTNA products would

13   be admissible in this case, there is nothing in the Court's ruling which sets the parameters

14   of what tread separations would not be the "same defect."

15
16   **I.      A Tread Separation is Not a Defect And Evidence of Tread Separation Occurring for Some *Other* Reason or Cause Would Be Irrelevant.**

17   The evidence introduced in the Motions in Limine make it clear that "tread

18   separations" occur in virtually all steel-belted radial tires for a variety of reasons, many of

19   which have nothing to do with a defect.   "Tread separation" in a steel-belted radial tire is

20   the equivalent of saying "frontal collision" for a passenger vehicle.   It defines or

21   delineates the <u>*mode*</u> of failure, without any reference to the "<u>*cause*</u>" of the failure, and

22   without any sense of whether that <u>*cause*</u> is or is not related to any kind of a <u>*defect*</u>.

23   Tread separation itself is not evidence of a defect.   Rather, tread separation can

24   occur with a properly designed and manufactured tire when the tire is subject to misuse

25   or is not properly maintained.   *See, e.g.*, *Diaz v. Uniroyal Tire Co.*, 618 So. 2d 505, 506

26   n.2 (La. App. 1993) ("although the plaintiffs suggested that the tread separation resulted

from a manufacturing or design defect, another possible cause was the existence of a cut through the tread of this five[-]year[-]old tire which allowed moisture to penetrate to the top steel belt . . . [and] could lead to rust and corrosion and eventually a separation of the tread from the belt . . . ."); *Korando v. Uniroyal Goodrich Tire Co.*, 637 N.E. 2d 1020, 1025-26 (Ill. 1994) (separation of tread may have been caused by impact and repairs to the tire that damaged the adhesion in the tire); *Sapp v. Stoney Ridge Truck Tire*, 619 N.E. 2d 1172, 1180 (Ohio App. 1993) (driving at excessive speed and driving on underinflated tires can lead to tread separation).

The federal government also disagrees that a tread separation is a defect. *See* Closing Report from the National Highway Traffic Safety Administration ("NHTSA") terminating its investigation of certain Firestone Steeltex tires attached as Exhibit A. *Id.*, p. 2. The U.S. Department of Transportation ("DOT") has specifically recognized underinflation, for example, as a cause of tread separations. *See* U.S. DOT Press Release, "*Many U.S. Passenger Vehicles are Driven on Under-inflated Tires, NHTSA Research Survey Shows*," NHTSA 46-01, August 29, 2001 ("Operating a vehicle with substantially under-inflated tires can result in a premature tire failure, such as instances of tread separation and blowouts, with the potential for a loss of control of the vehicle.") (attached as Exhibit B).

It is also widely and universally recognized within the tire industry that a tread separation is <u>not</u> a defect. According to the Tire Industry Association ("TIA") Passenger & Light Truck Tire Conditions Manual:

> It is widely recognized within the tire industry that tread/belt separations and/or detachments can occur from a wide variety of service conditions such as overdeflection (overloading and/or underinflation), unrepaired and improperly repaired punctures or injuries, wear into the belt structure, impact damage, road hazards, mounting damage, high speed operation, vehicle conditions like misalignment, improper storage, and other types of service damage or abuse. Each of these service conditions normally changes the physical condition of the tire or otherwise leaves evidence of the

1   underlying cause of the separation.

*See* TIA Passenger & Light Truck Tire Conditions Manual, 2005 Edition, p. 13, attached as Exhibit C.

Reputable and experienced tire examiners also expressly recognize and agree that tread separations can result from service related conditions like underinflation, overloading, impacts, punctures, improper repairs, mounting damage and so forth. *See, e.g.,* Calvin McClain and Michael DiTallo, *"Tire Examination after Motor Vehicle Collision,"* Chapter 8, *Traffic Collision Investigation*, Northwestern Univ. Center for Public Safety, 2001, (relevant portions attached as Exhibit D; *see also* Harold J. Herzlich, *"The Effect of Snaked Belt Anomolies on Tire Durability,"* ITEC 2000, Paper 15C, September 12-14, 2000 (attached as Exhibit E) ("The two most common initiators of belt-related tire disablements are road hazard injuries to the belt package or other components and underinflation."). *Id.* at p. 3.

Even Robert Ochs, Plaintiffs' *designated tire expert* in this case, agrees that a tread separation is not a defect.  He has repeatedly and unambiguously testified to this under oath.  *See*, *e.g.*, Deposition Transcript excerpts, attached as Exhibit F.  Ochs has agreed again and again under oath that a properly designed and manufactured tire can sustain a tread separation for reasons other than a defect in the tire, including overdeflection (underinflation and/or overloading), punctures, improper repairs, impact damage, mounting damage and high speed operation, among others. *Id.*  Ochs further agrees a separation in a tire is a condition (not a defect) resulting from some underlying cause. *Id.*

In short, the failure *mode* of "tread separation" in a steel-belted radial tire does not automatically create or constitute evidence of a defect or of a defect at issue in this case or create evidence relevant or even potentially relevant to the disputed issues in this case.

1   Unless the issues include some question for which *any* steel-belted radial tire tread

2   separation, *regardless of cause*, provides the answer, the evidence of other failures

3   (without proof of the cause of those failures) would prove to be irrelevant as well as

4   harmful, prejudicial and confusing.

5       The case law cited by the Court, involving the introduction of accidents with

6   mismatched parts of a multi-piece rim, and other accidents involving the attempt to put a

7   16" tire on a 16-1/2" rim does not support the admissibility of every steel-belted radial

8   tire tread separation (whether the tire is identical or not identical).   In *Jackson v.*

9   *Firestone Tire & Rubber Co.*, 788 F.2d 1070 (5th Cir. 1986), the appellate court found

10  that reference to multi-piece rim accidents involving different component parts was

11  relevant to the question of risk associated with a multi-piece rim failure.   No one, to

12  defendant's knowledge, is contesting the risk regarding a tread separation at highway

13  speeds, and the potential for a subsequent accident following driver panic or error.

14  Introducing evidence of dozens or hundreds of tread separations would be irrelevant to

15  the matters at issue here, at least until one could prove that the tread belt separation in

16  question resulted from a defect.   And absent such a showing, introduction of the evidence

17  would be harmful and prejudicial to the defendant, distracting the jury from the questions

18  at issue in the case (*e.g.* is this design safe) and instead focusing the jury on such a large a

19  series of accidents that no defendant could explain and analyze in a three-week trial.

20       In short, Defendant requests that the Court reconsider the portion of its Order

21  between pp. 4 and 6 which appear to be premised on the notion that a tread separation is

22  in and of itself somehow evidence of a defect in the product at hand and the portions of

23  its rulings on all Motions in Limine related to this fundamental misconception.   Unlike

24  the case law cited by the Court involving the mismatch of parts of a multi-piece rim or

25  mismatch of a 16" rim with a 16-1/2" tire, the issues in this case do not make the

26  admissibility of every steel-belted radial tire tread separation relevant, whether in a

1  CTNA product (or as the Court ruled, any other company's product).

2  **II.     What Are "Similar Tires"?**

3         The Court has made it clear that tires manufactured by other companies are not
4  "similar" for any purpose sufficient to justify introduction of evidence of failure of other
5  tire companies' tire designs or accidents involving the other companies' tires.  However,
6  the Court has yet to identify what parameters make an otherwise different CTNA tire
7  design sufficiently "similar" to allow introduction of evidence concerning that product.
8  Plaintiffs' assertion has been that <u>any</u> steel-belted radial tire made using the same rubber
9  compound or formula for the thin layer of rubber surrounding the steel belts (the "belt
10  skim stock" or "FB170") automatically renders that tire sufficiently "similar" to make a
11  tread separation involving that tire admissible for virtually any purpose.   However,
12  plaintiffs have not come forward with proof to support this position, which their own
13  expert contradicts.

14         There is no evidence that the "same skim compound" is considered by any tire
15  manufacturer as sufficient in and of itself to make the product "similar."   There is no
16  evidence to suggest that the government agency overseeing tire safety (the National
17  Highway Transportation Safety Administration or "NHTSA") considers the "same skim
18  stock" to be a defining characteristic similarity for analyzing tread belt separations.
19  Indeed, the evidence concerning NHTSA investigations confirms the exact opposite, that
20  NHTSA does not define the scope of its investigations by "all tires made with the same
21  skim compound."

22         Saying that tires with the same skim compound are somehow automatically
23  similar is like saying that all GM or Ford vehicles are the same because they are made
24  with that company's particular steel alloy.  Although the steel in a Ford Mustang and a
25  Ford Expedition may be the same steel, the presence of the same raw material would not
26  automatically render the two vehicles "similar" for almost any purpose.

The evidence presented in the Motions in Limine establish that tires are multi-layered, composite products, with each layer having its own original component dimensions and each layer interacting with <u>and significantly impacting</u> the operational performance of the other layer.  Thus, one tire design made with an excessively aggressive or thick amount of tread rubber at the shoulder, might build up sufficient heat in service to develop tread separations.  Identical tires made without this problematic tread design, but with the same skim compound rubber, would otherwise perform superbly.  Similarly, a tire design with too thin a layer of skim coat belt rubber might experience a series of separations, when other tires, made with a different gauge of skim stock rubber or with other differences, would also perform superbly.

In short, evidence of tread separations in one tire design does not necessarily say <u>anything</u> about the tread separations in another design, not only because a tread separation can occur for a large number of reasons, many of which have <u>nothing</u> to do with defect, but also because the "defect" in one design may have nothing to do with the skim compound in the other design.  Other factors, including the other component parts of the tire, how those parts interact in service, the service use and loading, and a variety of other factors could, would and will affect the situations in which the tire might improperly fail.

Evidence in <u>this</u> case, regarding <u>this</u> tire design, is clear:  more than 5,000,000 of the tires were made, there were fewer than 5 claims and lawsuits relating to the tire.  The "warranty" rate or "adjustment" rate categories related to tread belt separations do not signal or identify any marked problem with the tire.  Nevertheless, plaintiffs wish to introduce evidence of the tread separation failure of a variety of <u>other</u> tire designs, without establishing or offering any proof that those tire failures have any connection to a defect or to a defect in the tire design at issue.  Moreover, they seek to do so when the evidence of this case shows there was no similar pattern or failures of tires in <u>this</u> design.

1    This Court has already examined the pretrial order and ruled that there is no duty

2  to warn at issue in this case, there is no "duty to recall" at issue in this case, and there is

3  no post-manufacturing duty to warn of subsequent knowledge at issue in this case.

4  Accordingly, the experience that CTNA had with other tire designs <u>after</u> the date of

5  manufacture of this tire would be inadmissible for any related reason.

6                                CONCLUSION

7    The case law is clear:  in order to introduce evidence of "similar products" or of

8  "similar accidents" involving similar products, the burden lies with plaintiff to establish

9  sufficient "similarity."   Nothing in this case suggests that the ability of all steel-belted

10 radial tires to fail through a "tread belt separation" is at issue, any more than the

11 proclivity of all "SUV" vehicles to roll over would be at issue in a Ford Explorer roll

12 over case.  The issue is not the <u>*mode*</u> of failure, but rather whether the particular failure of

13 this tire in that mode was <u>*caused*</u> by a defect in design or manufacturing.

14    DATED this 20th day of September, 2005.

15

16 HARTLINE, DACUS, BARGER,                    FENNEMORE CRAIG
   DREYER & KERN, L.L.P.
17

18                                            By s/ Graeme Hancock
   By  s/Graeme Hancock for                      Graeme Hancock
19    C. Vernon Hartline                          Lawrence E. Palles
      Scott Edwards                               Attorneys for Defendant
20    Melissa Dorman
      Attorneys for Defendant
21

22

23

24

25

26

1

**CERTIFICATE OF SERVICE**

2

3

I hereby certify that on September 20, 2005, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4

5

6

William S. Frates
FRATES & SMITH, P.L.C.
830 Azalea Lane
Vero Beach, Florida  32963-4917
Attorneys for Plaintiff

7

8

9

Thomas F. Dasse
LAW OFFICE OF THOMAS F. DASSE, P.C.
14646 North Kierland Blvd., Suite 235
Scottsdale, Arizona  85254
Attorney for Plaintiff

10

11

12

s/ Graeme Hancock

13

14

15

16

17

18

19

20

21

22

23

24

25

26